# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

GREGORY W. HOWARD,

      Plaintiff,

v.

TECH TRADING, INC.,

      Defendant.

Civil Action No.
05-11295-RWZ

---

**BRIEF OF DEFENDANT, TECH TRADING, INC., TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) AND TO VACATE THE STATE COURT'S ENTRY OF DEFAULT PURSUANT TO FED. R. CIV. P. 55(c)**

---

**GIBSON & BEHMAN, P.C.**
One Mountain Road
Burlington, Massachusetts 01803
Attorneys for Defendant,
Tech Trading, Inc.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................................ 1

FACTUAL & PROCEDURAL BACKGROUND ........................................................................... 1

LEGAL ARGUMENT ..................................................................................................................... 3

POINT I ........................................................................................................................................... 3

    STANDARD OF REVIEW ......................................................................................................... 3

POINT II .......................................................................................................................................... 3

    THE COURT SHOULD DISMISS OR STAY THIS MATTER PENDING ALTERNATIVE
    DISPUTE RESOLUTION, MEDIATION OR ARBITRATION ............................................... 3

POINT III ......................................................................................................................................... 9

    THE COURT SHOULD VACATE DEFAULT ENTERED PREVIOUSLY BY THE STATE
    COURT ........................................................................................................................................ 9

    A. This Court has the Authority to Vacate a State Court's Entry of Default ........................... 9

    B. Standard to Vacate Entry of Default Pursuant to Rule 55(c) of the Federal Rules of Civil
    Procedure ................................................................................................................................... 10

    1.    Plaintiff Will Suffer No Prejudice ....................................................................... 12

    2.    The Willfulness Standard ...................................................................................... 12

    3.    Tech Trading has a Meritorious Defense to the Claims Asserted by Howard ...... 14

CONCLUSION .............................................................................................................................. 16

## TABLE OF AUTHORITIES

Cases

Armco Steel Co., L.P. v. CSX Corp.,
  790 F. Supp. 311 (D.D.C. 1991) ..................................................................................................... 7

AT&T Technologies, Inc. v. Communications Workers of America,
  475 U.S. 643 (1986) ....................................................................................................................... 9

Brown v. Demco, Inc.,
  792 F.2d 478 (5th Cir. 1986) ....................................................................................................... 21

Bushkin Associates, Inc. v. Ratheon Co.,
  393 Mass. 622, 473 N.E. 2d 662 (1985) ....................................................................................... 8

Colonial Bank Trust Co. v. Cahill,
  424 F. Supp. 1200 (N.D. Ill. 1976) .............................................................................................. 15

Coon v. Grenier,
  867 F.2d 73 (1st Cir. 1989) ......................................................................................... 16, 17, 18, 22

Cooperman v. Individual Inc.,
  171 F.3d 43 (1st Cir. 1999) ............................................................................................................ 5

Drywall Sys., Inc. v. ZVI Constr. Co.,
  435 Mass. 664 (2002) ..................................................................................................................... 9

FDIC v. Francisco Inv. Corp.,
  873 F.2d 474 (1st Cir. 1989) ........................................................................................................ 18

Feliciano v. Reliant Tooling Co., Ltd.,
  691 F.2d 653 (3d Cir. 1982) ............................................................................................... 18, 19, 20

Flight Systems v. Paul A. Laurence Co.,
  715 F. Supp. 1125 (D.D.C. 1989) .................................................................................................. 6

FMC, Inc.,
  318 F.3d 1 (1st Cir. 2003) ................................................................................................. 17, 19, 20

General Contracting & Trading Co. v. Interpole, Inc.,
  899 F.2d 109 (1st Cir. 1990) ........................................................................................................ 16

Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70,
  415 U.S. 423, (1974) ............................................................................................................... 15, 16

Hernandez-Lopez v. Commonwealth of Puerto Rico,
  30 F. Supp. 2d 205 (D.P.R. 1998)..............................................................................................21

Home Gas Corp. of Mass., Inc. v. Walter's of Hadley, Inc.,
  403 Mass. 772 (1989) ..................................................................................................................9

In re Newport Plaza Assocs., L.P.,
  985 F.2d 640 (1st Cir. 1993).......................................................................................................8

In re Tri-Star Technologies Co., Inc.,
  257 B.R. 629 (Bankr. D. Mass.2001) ........................................................................................25

Informix, Inc. v. Rennell,
  1 Mass. App. Ct. 161, 668 N.E. 2d 1351 (Mass. Ct. App. 1996),
  review denied, 672 N.E. 2d 538, 423 Mass. 1110 (1996)...........................................................25

Joseph Fancese, Inc. v. DOS Concrete Services, Inc.,
  47 Mass. App. Ct. 367, 713 N.E. 2d 984(Mass. Ct. App. 1999) ...............................................13

Kam Hon, Inc. v. Cigna Fire Underwriters Ins. Co.,
  993 F. Supp. 1060 (M.D. Fla. 1996)..........................................................................................21

KPS Associates, Inc. v. Designs by FMC, Inc.,
  318 F.3d 1 (1st Cir. 2003).....................................................................................................17, 19

Ladd v. Scudder Kemper Inv., Inc.,
  433 Mass. 240 (2001) ..................................................................................................................9

Madan v. Royal Indem. Co.,
  26 Mass. App. Ct. 756, 532 N.E. 2d 1214
  (Mass. Ct. App. 1989).................................................................................................................24

Massachusetts Correction Officers Federated Union v. Sheriff of Bristol County, 55 Mass. App.
  Ct. 285, 770 N.E. 2d 528
  (Mass. App. Ct. 2002)...................................................................................................................9

Massachusetts Municipal Wholesale Elec. Co v. Town of Danvers, 411 Mass. 39, 577 N.E. 2d
  283 (1991).....................................................................................................................................7

McKinnon v. Doctor's Assocs., Inc.,
  769 F. Supp. 216 (E.D. MI. 1991).............................................................................................21

Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,
  460 U.S. 1 (1983) .......................................................................................................................21

Nationwide Ins. Co. of Columbus Ohio v. Patterson,

953 F.2d 44 (3d Cir. 1991)........................................................................................................ 6
Nissho-Iwai Am. Corp. v. Kline,
  845 F. 2d 1300 (5th Cir. 1988) ........................................................................................ 15, 16

Pepsi-Cola Metro. Bottling Co., Inc. v. Checkers, Inc.,
  754 F.2d 10 (1st Cir. 1985)...................................................................................................... 24

Ralston v. The Phoenix Ins. Co.,
  1999 WL 1319198, *3 (Mass. Super. Ct. Apr. 29, 1999)............................................................. 8

Resolution Trust Corp. v. Nernberg,
  3 F.3d 62 (3d Cir. 1993)..................................................................................................... 15, 16

Rivera v. Rhode Island,
  402 F.3d 27 (1st Cir. 2005)........................................................................................................ 5

Saturn Distribution Corp. v. Williams,
  905 F.2d 719 (4th Cir.1990) ...................................................................................................... 6

Sea-Land Service, Inc. v. Ceramica Europa II, Inc.,
  160 F.3d 849 (1st Cir. 1998).................................................................................................... 17

Shearson Lehman Bros., Inc. v. Brady,
  783 F. Supp. 1490 (D. Mass. 1991) ............................................................................................ 6

State Farm Mutual Auto. Ins. Co. v. Coviello,
  233 F.3d 710 (3d Cir. 2000)....................................................................................................... 6

Steranko v. Inforex, Inc.,
  5 Mass. App. Ct. 253, 362 N.E. 2d 222 (1977) .......................................................................... 8

Trent Partners & Associates, Inc. v. Digital Equipment Corp., 120 F. Supp. 2d 84 (D. Mass.
  1999)............................................................................................................................ 23, 24, 25

United States v. One Parcel of Real Property,
  763 F.2d 181 (5th Cir. 1985) ................................................................................................... 16

United States v. One Urban Lot Located at 1 Street A-1,
  885 F.2d 994 (1st Cir. 1989)..................................................................................................... 17

United Steelworker of America v. Warrior & Gulf Nav. Co.,
  120 F. Supp. 2d 84 (D. Mass. 1999) ........................................................................................... 9

VMark Software, Inc. v. EMC Corp.,
  37 Mass. App. Ct. 610, 642 N.E. 2d 587
  (Mass. App. Ct. 1994).............................................................................................................. 24

Volt Information Sciences, Inc. v. Board of Trustees,
  489 U.S. 468 ............................................................................................................................ 6

Watterson v. Page,
  987 F.2d 1 (1st Cir. 1993) ...................................................................................................... 5

Whitinsville Plaza, Inc. v. Kotseas,
  378 Mass. 85, 390 N.E. 2d 243 (1979) .................................................................................. 7

Wood v. Roy Lapidus, Inc.,
  10 Mass. App. Ct. 761, 413 N.E. 2d 345 (1980) ................................................................... 7


Regulations

28 U.S.C. § 1441 ................................................................................................................. 4, 21

28 U.S.C. § 1446(b) .............................................................................................................. 21

28 U.S.C. § 1450 ................................................................................................................... 14

MASS. GEN. LAWS ch. 93A, § 11 ...................................................................................... 23

MASS. GEN. LAWS ch. 93A, § 2 ........................................................................................ 23

## PRELIMINARY STATEMENT

Gregory W. Howard ("Howard"), and Tech Trading, Inc. ("Tech Trading") executed a Sales Representative Agreement (the "Agreement") for the purposes of employing Howard as a sales representative. The Agreement, which was voluntarily negotiated and agreed to by the parties, requires that any and all disputes be resolved in the following manner: first, through alternative dispute resolution; second, through mediation; and finally through arbitration before the American Arbitration Association.

Despite the valid contractual provision governing the resolution of any and all claims pursuant to alternative dispute resolution, mediation or arbitration, Howard filed a Complaint in the Superior Court Department of the Trial Court of the Commonwealth of Massachusetts, Plymouth County, under Civil Docket Number PLCV2005-00603. Defendant now moves for the enforcement of the contractual provision, namely to submit the dispute to alternative dispute resolution, mediation or the American Arbitration Association.

## FACTUAL & PROCEDURAL BACKGROUND

For purposes of only the instant motion, the pertinent facts are as follows. On or about August 1, 2003, Howard and Tech Trading executed the Agreement for the purposes of employing Howard as a sales representative. (Affidvit of Arthur E. Maravelis, Esq. ("Maravelis Aff."), at ¶ 3, Exh. A). Pursuant to the Agreement, Howard was obligated to, among other things, provide to the best of his abilities certain services such as pricing, maintaining sales quotas and traveling to visit clients and accounts. (Maravelis Aff., at ¶ 3, Exh. A).

The Agreement also contained various provisions concerning its enforcement and claims regarding its provisions. Specifically, the Agreement contained a choice of law provision that required disputes concerning the Agreement to be resolved "in accordance with the laws of the

1

[Commonwealth] of Massachusetts." (Maravelis Aff., at ¶3, Exh. A at ¶16). In addition, the Agreement provided that any and all disputes "be resolved through binding alternative dispute resolution[,]" and, if not resolved within thirty days of submitting to dispute resolution, then the disputes "shall be resolved first by attempting mediation for a period of thirty (30) days." (Maravelis Aff., at ¶2, Exh. A at ¶ 16). If, after thirty days of mediation, the disputes remain unresolved, "then the parties shall be required to resort exclusively to arbitration ... held in Plymouth, Massachusetts in accordance with the then prevailing Rules of the American Arbitration Association for commercial arbitrations." (Maravelis Aff., at ¶ 3, Exh. A at ¶ 16).

Despite the existence of the aforementioned provisions, Howard filed a Complaint in the Superior Court Department of the Trial Court of the Commonwealth of Massachusetts, Plymouth County, under Docket No. PLCV2005-00603-B. The Complaint asserts claims against Tech Trading for breach of the Agreement, unjust enrichment, quantum meruit, promissory estoppel and alleges unfair and deceptive trade practices in violation of M.G.L. c. 93A, § 11. (Compl., at Counts I-IV). Significantly, the Complaint also alleges that the "Plaintiff and Defendant executed [the Agreement]" and seeks to enforce the Agreement's terms concerning compensation and commission allegedly owed to Howard. (Compl., at ¶¶ 3-13).

Defendants timely removed the case from the Superior Court Department to this Court pursuant to 28 U.S.C. § 1441. Four days before Tech Trading removed this case, however, the Clerk of the Superior Court entered default against Tech Trading. Pursuant to Rule 81(c) of the Federal Rules of Civil Procedure, this motion, which "present[s] [Tech Trading's] other defenses or objections," follows and simultaneously seeks to vacate the state court's entry of default.

## LEGAL ARGUMENT

### POINT I -  STANDARD OF REVIEW

For purposes of resolving a motion to dismiss for failure to state a claim on which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, this Court "must take the allegations in the plaintiff's pleadings as true and must make all reasonable inferences in favor of the plaintiff." Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005). "Dismissal under Rule 12(b)(6) is only appropriate if the complaint, so viewed, presents no set of facts justifying recovery." Cooperman v. Individual Inc., 171 F.3d 43, 46 (1st Cir. 1999).  A reviewing court is not, however, unduly constrained.  An exception to the general principle of limitation to the complaint has been made "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

Here, the Agreement is expressly referenced in, is attached to and is integral to the claims set forth in the Complaint.  Accordingly, the Court may consider the Agreement in reaching a decision in connection with the present motion.

### POINT II

### THE COURT SHOULD DISMISS OR STAY
### THIS MATTER PENDING ALTERNATIVE DISPUTE
### RESOLUTION, MEDIATION OR ARBITRATION

This court has jurisdiction to decide the dispute as to the arbitrability of the underlying substantive claims in this case.  See Shearson Lehman Bros., Inc. v. Brady, 783 F. Supp. 1490, 1493 (D. Mass. 1991) (citing Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 20 (1983); Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985)). Because the issue of submitting cases to arbitration is essentially substantive rather than procedural, courts

3

sitting in diversity must apply state law.    See Nationwide Ins. Co. of Columbus Ohio v. Patterson, 953 F.2d 44, 46 (3d Cir. 1991); State Farm Mutual Auto. Ins. Co. v. Coviello, 233 F.3d 710, 713 (3d Cir. 2000).

Correspondingly, where parties to a contract containing an arbitration clause have specified that the contract is governed by the law of a particular jurisdiction, a federal court generally may apply the law of the specified jurisdiction, not federal law, to determine the applicability of the arbitration provision. Volt Information Sciences, Inc. v. Board of Trustees, 489 U.S. 468; Saturn Distribution Corp. v. Williams, 905 F.2d 719, 727 (4th Cir.1990); Flight Systems v. Paul A. Laurence Co., 715 F. Supp. 1125, 1127 (D.D.C. 1989).    Indeed, it is well settled that when interpreting a contract and ascertaining the parties' intent, "a [Massachusetts] court considers the words used by the parties, the agreement taken as a whole, and surrounding facts and circumstances."    Massachusetts Municipal Wholesale Elec. Co v. Town of Danvers, 411 Mass. 39, 45-46, 577 N.E. 2d 283, 288 (1991) (citing Wood v. Roy Lapidus, Inc., 10 Mass. App. Ct. 761, 764, 413 N.E. 2d 345, 348 (1980)).

Here, the same paragraph of the Agreement that provides for arbitration also specifies that Massachusetts law would govern and resolve disputes concerning Howard's employment and the Agreement.    Pursuant to a choice of law provision in the Agreement, the parties voluntarily selected Massachusetts law to govern and resolve disputes concerning the enforceability of the Agreement.    Paragraph 16 of the Agreement specifically provides:

> This agreement shall be governed by and construed in accordance with the laws of the State of Massachusetts.

(See Maravelis Aff., at ¶ 2, Exh. A at ¶ 16).    "By including the [Massachusetts] choice-of-law provision, the parties indicated their intention to arbitrate to the extent allowed by [Massachusetts] law."    Armco Steel Co., L.P. v. CSX Corp., 790 F. Supp. 311 (D.D.C. 1991).

4

Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, the state and federal courts in the Commonwealth of Massachusetts and in the Court of Appeals for the First Circuit will uphold the contractual choice. See In re Newport Plaza Assocs., L.P., 985 F.2d 640, 644 (1st Cir. 1993) ("When opposing parties agree to the source of the substantive law that controls their rights and obligations, and no jurisdictional concerns are present, a court is at liberty to accept such an agreement without independent inquiry."); Ralston v. The Phoenix Ins. Co., 1999 WL 1319198, *3 (Mass. Super. Ct. Apr. 29, 1999) ("'Where the parties have expressed a specific intent as to the governing law, Massachusetts courts will uphold the parties' choice as long as the result is not contrary to public policy ... and as long as the designated State has some substantial relation to the contract.'") (quoting Steranko v. Inforex, Inc., 5 Mass. App. Ct. 253, 260, 362 N.E. 2d 222 (1977)); see also Bushkin Associates, Inc. v. Ratheon Co., 393 Mass. 622, 630-31, 473 N.E. 2d 662 (1985) (establishing and articulating substantial relation to contract prong of analysis). Clearly, the parties to the Agreement at issue intended that Massachusetts law, including Massachusetts arbitration law, should govern the interpretation of the Agreement and the effect of its arbitration clause. Accordingly, this Court must employ the substantive law of Massachusetts to determine whether the case should appropriately be submitted to arbitration.

Both Massachusetts and federal law recognize a strong public policy in favor of arbitration of disputes. See Drywall Sys., Inc. v. ZVI Constr. Co., 435 Mass. 664, 669 (2002); Ladd v. Scudder Kemper Inv., Inc., 433 Mass. 240, 246 (2001); Home Gas Corp. of Mass., Inc. v. Walter's of Hadley, Inc., 403 Mass. 772, 774 (1989). For that reason, where a contract contains an arbitration clause, Massachusetts courts proceed on the basis of "a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an

interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage"
.... Such a presumption is particularly applicable where the clause is [] broad[.]" Massachusetts
Correction Officers Federated Union v. Sheriff of Bristol County, 55 Mass. App. Ct. 285, 287-
88, 770 N.E. 2d 528, 531 (Mass. App. Ct. 2002) (quoting AT&T Technologies, Inc. v.
Communications Workers of America, 475 U.S. 643, 648 (1986) (quoting United Steelworkers
of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582-583 (1960))).

In the instant case, the parties to the Agreement voluntarily and expressly agreed that any
action concerning Howard's employment or the Agreement "**shall** be resolved through binding
alternative dispute resolution. Maravelis Aff., at ¶3, Exh. A at ¶ 16) (emphasis supplied). If after
thirty days the dispute is not resolved, then the dispute "**shall** be resolved first by the parties
attempting mediation for a period of thirty (30) days." (Maravelis Aff., at ¶ 3, Exh. A at ¶ 16)
(emphasis supplied). (Maravelis Aff., at ¶ 3, Exh. A at ¶ 16) (emphasis supplied). Finally, if the
dispute remains after thirty days of mediation:

> Then the parties **shall** be required to resort exclusively to arbitration. Arbitration
> shall be held in Plymouth, Massachusetts in accordance with the then prevailing
> Rules of the American Arbitration Association for commercial arbitration.

(Maravelis Aff., at ¶ 3, Exh. A at ¶ 16) (emphasis supplied). The Agreement even provides the
procedures to be followed for selecting an arbitrator should the parties not agree mutually to one.
(Maravelis Aff., at ¶ 3, Exh. A at ¶ 16). Because it is unmistakably clear that the intent of the
parties was to resolve this dispute in an alternative forum, the only remaining issue is whether
the claims asserted by Howard fall within the scope of the arbitration provision.

The dispute provision unambiguously governs "[a]ny and all claims arising out of this
Agreement or the relationship between the parties." (Maravelis Aff., at ¶ 3, Exh. A at ¶ 16).
Simply stated, the dispute provision freely negotiated between the parties covers any and all

disputes concerning the Agreement, Howard's employment and compensation pursuant to the Agreement, and the various provisions of the Agreement.

Howard alleges in the Complaint that he and Tech Trading "executed [the Agreement]." (Compl., at ¶3). Howard further alleges that "**[p]ursuant to the Agreement**, Plaintiff was to be hired as a Sales Representative for the Defendant." (Compl., at ¶4)(emphasis supplied). Howard additionally claims that "**[p]ursuant to the Agreement**, the Sales Representative compensation is limited to commissions in the amount of Twenty-six (26%) percent of the adjusted gross profit of sales, which equals sales minus purchase order cost of goods." (Compl., at ¶ 5) (emphasis supplied). Significantly, although he does not use quotation marks, Howard directly quotes the Agreement to assert that particular factual allegation. (Compare Maravelis Aff., at ¶3, Exh. A at ¶4, with Compl., at ¶5). Paragraph 6 of he Complaint, in quotations, further refers to the terms of the Agreement:

> **Pursuant to the Agreement** "for purposes of calculating the cost of goods sold, only the following items shall be included: (i) on all Ingram Micro sales, one percent (1%) of sales for return of merchandise authorizations (RMA), plus two percent (3%) of cost of goods sold for shipping and handling (freight in and out), plus four percent (4%) of net sales charge for sales rebate; (ii) on all Tech Data sales, one percent (1%) of sales return of merchandise authorizations (RMA), plus two percent (3%) of cost of goods sold for shipping and handling (freight in and out); and (iii) on all marketing and promotional monies paid out by company. If company vendor contributes any or all said amounts for direct use by the Sales Representative, these monies will be added to Sales Representative adjusted gross profit amount."

(Compare Maravelis Aff., at ¶ 3, Exh. A at ¶ 4, with Compl., at ¶ 6) (emphasis supplied). Numerous other factual allegations either directly quote or expressly refer to the Agreement. (Compl., at ¶¶ 7, 8, 11).

In Count I of the Complaint, Howard seeks to recover damages for Tech Trading's alleged breach of the Agreement. (Compl., at ¶¶ 15-20). Howard alleges that the Agreement is valid and enforceable, and that Tech Trading has breached the Agreement's terms by, among

7

other things, failing to pay Howard commissions that he allegedly "earned **pursuant to the Agreement**." (Compl., at ¶¶ 16, 18) (emphasis supplied).

Howard's remaining claims are likewise grounded in the Agreement. In support of his unjust enrichment and quantum meruit claims in Count II, Howard claims that he "provided services to [Tech Trading] … **pursuant to their contract and agreement**." (Compl., at ¶ 22) (emphasis supplied). Howard's promissory estoppel claim in Count III alleges that Tech Trading "made promises regarding payments **under the parties' agreement**." (Compl., at ¶ 27) (emphasis supplied). Finally, the crux of Howard's claim for unfair and deceptive trade practices in violation of M.G.L. c. 93A, § 11 is that Tech Trading allegedly "fail[ed] to pay commissions **pursuant to the Agreement**[.]" (Compl., at ¶ 33) (emphasis supplied).

The gravamen of Howard's Complaint is that he expected but did not receive compensation in the form of commissions pursuant to the Agreement. It is unmistakably clear that the Agreement is central to Howard's claims. Thus, the claims set forth in the Complaint undoubtedly fall within the scope of the dispute resolution provision.

Fundamental rules of contract interpretation require that this Court "must give effect to the parties' intention and construe the language to give it reasonable meaning wherever possible." Joseph Fancese, Inc. v. DOS Concrete Services, Inc., 47 Mass. App. Ct. 367, 369, 713 N.E. 2d 984, 986 (Mass. Ct. App. 1999). Accordingly, this Court should submit this case to alternative dispute resolution, mediation or arbitration before the American Arbitration Association consistent with the parties' intent as set forth in the dispute resolution provision in the Agreement.

## POINT III

### THE COURT SHOULD VACATE DEFAULT ENTERED PREVIOUSLY BY THE STATE COURT

On June 17, 2005, four days before Tech Trading timely removed the case to this Court, the Superior Court of the Commonwealth of Massachusetts, Plymouth County, entered default pursuant to Rule 55(a) of the Massachusetts Rules of Civil Procedure without Tech Trading's knowledge. (Maravelis Aff., at ¶4, Exh. B). Howard has not moved for judgment by default pursuant to Rule 55(b) of the Massachusetts Rules of Civil Procedure and may not because Tech Trading's timely removal of this case effectively divested the state court of jurisdiction over this case. Tech Trading therefore requests that this Court vacate the entry of default entered by the state court.

**A.    This Court has the Authority to Vacate a State Court's Entry of Default**

Pursuant to §1450 of Title 28 of the United States Code, when an action is removed from state to federal court, "[a]ll injunctions, orders and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the District Court." 28 U.S.C. § 1450; see also Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70, 415 U.S. 423, 437 (1974).

Once a case has been removed to federal court, federal rather than state law governs the future course of proceedings despite state court orders issued before removal. Granny Goose Foods, Inc., 415 U.S. at 437. The orders or judgments entered by the state court before removal should therefore be treated as orders or judgments entered by the district court to which the action was removed. See Resolution Trust Corp. v. Nernberg, 3 F.3d 62 (3d Cir. 1993); Colonial Bank Trust Co. v. Cahill, 424 F. Supp. 1200, 1203 (N.D. Ill. 1976); FED. R. CIV. P. 81(c) (stating that federal rules "apply to civil actions removed to the United States district courts from

9

state courts and govern procedure after removal.") Thus, this Court has the power to enforce or discontinue orders of judgments entered by the Superior Court as it would any such order or judgment it might itself have issued and entered. See Colonial Bank Trust Co., 424 F. Supp. at 1203; Nissho-Iwai Am. Corp. v. Kline, 845 F. 2d 1300, 1304 (5th Cir. 1988).

Pursuant to the jurisprudence governing removal of actions and the enforceability and applicability of orders entered before removal by a state court, it is clear that the Order from the Clerk of the Superior Court has become "federalized," for lack of a better term. Accordingly, where an action has been removed to federal court after an order or judgment has been entered by the state court, parties are to move in the District Court to alter, modify or open the judgment. See Resolution Trust Corp., 3 F.3d 62. Federal procedure therefore governs the manner in which the Order at issue is to be enforced if at all and supplies the policy justifications for its discontinuance. See Nissho-Iwai Am. Corp., 845 F.2d at 1303.

### B.    Standard to Vacate Entry of Default Pursuant to Rule 55(c) of the Federal Rules of Civil Procedure

Rule 55(c) of the Federal Rules of Civil Procedure provides:

(c)    Setting Aside Default. For good cause shown, the court may set aside an entry of default, and if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

FED. R. CIV. P. 55(c). Pursuant to Rule 55(c) of the Federal Rules of Civil Procedure, an entry of default may only be set aside "[f]or good cause shown." General Contracting & Trading Co. v. Interpole, Inc., 899 F.2d 109, 112 (1st Cir. 1990). Relevant factors to be considered in determining "good cause" include: "'whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented.'" Coon v. Grenier, 867 F.2d 73, 76 (1st Cir. 1989) (quoting United States v. One Parcel of Real Property, 763 F.2d 181, 183 (5th Cir. 1985)). "While the three factors that are typically considered by courts in deciding whether to grant relief from default ... are important and should be

10

considered, a district court's failure to expressly consider them does not necessarily constitute abuse of discretion." KPS Associates, Inc. v. Designs by FMC, Inc., 318 F.3d 1, 12 (1st Cir. 2003). Indeed, a court may also consider the explanation for the default, the good faith of the parties, the amount of money involved, and the timing of the motion. Coon, 867 F.2d at 76.

Courts in the First Circuit recognize "that each case must necessarily turn on its own unique circumstances." Id. "Thus Rule 55(c), as an expression of the traditional inherent equity power of the federal courts, permits the consideration of a panoply of relevant equitable factors." KPS Associates, Inc., 318 F.3d at 12 (internal quotations and citations omitted).

District courts enjoy broad discretion in deciding motions to set aside entry of default under Rule 55(c). See Sea-Land Service, Inc. v. Ceramica Europa II, Inc., 160 F.3d 849, 851 (1st Cir. 1998) (citing United States v. One Urban Lot Located at 1 Street A-1, 885 F.2d 994, 997 (1st Cir. 1989)). Courts have taken a "liberal approach" to setting aside an entry of default. Coon, 867 F.2d at 76. The First Circuit cogently articulated why relief should be granted freely under Rule 55(c):

> Allowing an entry of default to be set aside on a showing of reasonable justification is in keeping both with the philosophy that actions should ordinarily be resolved on their merits, and with the command of the Civil Rules themselves. These policy considerations, we suggest, are at their zenith in the Rule 55(c) milieu. Early in the case, as when a default has been entered but no judgment proven, a liberal approach is least likely to cause unfair prejudice to the nonmovant or to discommode the court's calendar. In these circumstances, a district court should resolve doubts in favor of a party seeking relief from the entry of a default.

Coon, 867 F.2d at 76 (internal citations omitted).

An analysis of the facts in this matter within the framework set forth above clearly demonstrates that the entry of default in this matter should be vacated so that the case may proceed to alternative dispute resolution, mediation or arbitration to be decided on the merits.

### 1.    Plaintiff Will Suffer No Prejudice

Howard will suffer no prejudice if the Court vacates the state court's entry of default in this matter. Factors to be considered in determining the existence of prejudice include: (1) loss of available evidence; (2) increased potential for fraud; and (3) substantial reliance on the entry of default. FDIC v. Francisco Inv. Corp., 873 F.2d 474, 479 (1st Cir. 1989); see also Feliciano v. Reliant Tooling Co., Ltd., 691 F.2d 653, 657 (3d Cir. 1982). Howard has not and cannot set forth any facts or evidence to support the existence of any one of these three factors. Here, Howard's ability to pursue his claim will not be hindered by an order vacating the state court's entry of default and there is simply no risk of the loss of evidence.

The only minimal prejudice that Howard can claim is that, assuming he ultimately prevails on the merits, his recovery will be delayed by an Order vacating default. It should be noted, however, that "delay in and of itself does not constitute prejudice." KPS Associates, Inc., 318 F.3d at 15; see also Feliciano, 691 F.2d at 656-57.

For the reasons set forth above, this factor clearly weighs in favor of vacating the state court's entry of default in this matter.

### 2.    The Willfulness Standard

Tech Trading's failure to file an Answer or otherwise move in this matter in state court was not the result of willful conduct or bad faith to avoid responding to the claims set forth in the Complaint. In KPS Associates, Inc., the First Circuit addressed the type of willful conduct that will typically result in a denial of an application to vacate the entry of default. In KPS Associates, Inc., the appellate court noted that the defendant's representative "was an evasive witness," "repeatedly refus[ed] to give direct answers to questions posed by opposing counsel and questions posed by the court," "repeatedly contradicted himself on the witness stand and was impeached with his own affidavit filed that morning," and that he "could hardly be considered

'honest' in light of [his] wildly morphing claims over the course of this dispute." KPS Associates, Inc., 318 F.3d at 23. The Third Circuit correspondingly defines "culpable conduct" as actions taken in "bad faith." See Feliciano, 691 F.2d at 657.

In the present matter, Tech Trading was served with a copy of the Complaint on May 23, 2005. (Maravelis Aff., at ¶ 4, Exh. C). Pursuant to Massachusetts Rules of Civil Procedure, Tech Trading's responsive pleading was due within twenty days pursuant to Massachusetts Rule of Civil Procedure 12(a)(1). Tech Trading, an out-of-state defendant, was not able to retain local counsel until approximately June 17, 2005, the date on which the entry of default was entered by the Clerk of the Superior Court. Thus, the earliest that Tech Trading would have been able to file and serve a responsive pleading after retaining local counsel would have been June 18, 2005, one date after the entry of default. Indeed, Tech Trading would have been required to move to vacate the entry of default in state court had it not removed the case immediately after obtaining local counsel.

Furthermore, Tech Trading did not present its objections and defenses in a motion to dismiss to compel arbitration because it intended to remove the case to this Court pursuant to 28 U.S.C. § 1441, which it timely did thirty days after receiving the Complaint. Indeed, if Tech Trading first responded to the Complaint in state court by filing its motion to dismiss and compel arbitration, and then removed the case to this Court, then this Court would have sua sponte remanded the case to state court based Tech Trading's waiver of the right to remove because of its active participation in the state court proceeding. See 28 U.S.C. § 1446(b); McKinnon v. Doctor's Assocs., Inc., 769 F. Supp. 216, 220 (E.D. MI. 1991) (moving in state court to compel arbitration operates as waiver of right to remove); Brown v. Demco, Inc., 792 F.2d 478 (5th Cir. 1986) (waiver of right to remove found where defendant takes actions in state court that manifest intent to have matter adjudicated there); Hernandez-Lopez v. Commonwealth of Puerto Rico, 30

F. Supp. 2d 205, 208-09 (D.P.R. 1998) (right to remove waived if defendant's actions evidence invocation of state court's jurisdiction or if defendant manifests intent to have matter adjudicated there); Kam Hon, Inc. v. Cigna Fire Underwriters Ins. Co., 993 F. Supp. 1060 (M.D. Fla. 1996) (holding court has authority to sua sponte remand for purposes of waiver and procedural defects of removal).

Based on the facts as set forth above, it is clear that Tech Trading's lack of responsive pleading or appropriate motion in the state court proceeding before it removed the case and moved to compel alternative dispute resolution, mediation or arbitration was not willful or in bad faith as contemplated by the governing case law. For the reasons set forth above, this factor clearly weighs in favor of vacating the state court's entry of default in this matter.

### 3.  Tech Trading has a Meritorious Defense to the Claims Asserted by Howard

In the present matter, there can be no doubt that Tech Trading has a meritorious defense to Howard's claims. "The 'meritorious defense' component of the test for setting aside a default does not go so far as to require that the movant demonstrate a likelihood of success on the merits. Rather, a party's averments need only plausibly suggest the existence of facts which, if proven at trial, would constitute a cognizable defense." Coon, 867 F.2d at 77.

First and foremost, Tech Trading's affirmative defense to this action is that the case should never have been filed in court in the first place. Pursuant to the valid dispute provision of the Agreement – an agreement that Howard seeks to enforce – this dispute is to be resolved not by a court, but by binding alternative dispute resolution, mediation or arbitration before the American Arbitration Association. Howard cannot have it both ways – ignoring the dispute provision of the Agreement, yet seeking to enforce the provisions of the Agreement concerning his compensation and commission. Simply stated, Howard should be bound by the entire Agreement, not simply a selected provision.

14

Second, it is worth noting that Howard's claim for unfair and deceptive trade practices fails as a matter of law. Chapter 93A remedies are available to:

> [a]ny person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two or by any rule or regulation issued under paragraph (c) of section two.

MASS. GEN. LAWS ch. 93A, §11. Section two, referred to in the section 11, is silent with respect to the type of conduct that constitutes "unfair or deceptive act or practice." See Trent Partners & Associates, Inc. v. Digital Equipment Corp., 120 F. Supp. 2d 84, 106 (D. Mass. 1999); see MASS. GEN. LAWS ch. 93A, § 2.

"In order to constitute violation of Massachusetts deceptive trade practices statute, the conduct in question must attain level of rascality that would raise eyebrow of someone inured to rough and tumble of world of commerce." Trent Partners & Associates, Inc., 120 F. Supp. 2d at 106. That working definition of the conduct necessary for a violation was qualified to "be within any recognized or established common law or statutory concept of unfairness." Id. (quoting VMark Software, Inc. v. EMC Corp., 37 Mass. App. Ct. 610, 620, 642 N.E. 2d 587, 595 (Mass. App. Ct. 1994)).

Specifically with respect to Howard's claim for unfair and deceptive trade practices against Tech Trading, the claim fails as a matter of law for two reasons. First, "it is well settled that a simple breach of contract is never enough, by itself, to constitute a violation of Chapter 93A." Trent Partners & Associates, Inc., 120 F. Supp. 2d at 106 (citing Pepsi-Cola Metro. Bottling Co., Inc. v. Checkers, Inc., 754 F.2d 10, 18 (1st Cir. 1985); Madan v. Royal Indem. Co., 26 Mass. App. Ct. 756, 762, 532 N.E. 2d 1214, 1217 (Mass. Ct. App. 1989) (citing Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 100-01, 390 N.E. 2d 243, 251 (1979)). In Count IV of its Complaint, Howard claims that Tech Trading somehow committed an unfair act in violation of

15

Massachusetts's unfair and deceptive trade practices law by failing to pay commissions pursuant to the Agreement, withholding expenses and padding certain expenses in an effort to reduce the income of Plaintiff, in addition to failing to pay the Plaintiff for services rendered to Defendant." (Compl., at ¶ 33). Essentially, Howard alleges that a violation of Chapter 93A occurred by reason of Tech Trading's breach of the Agreement and nothing more.

Second, the Massachusetts statute on which Howard bases his claim does not apply to employee-employer type disputes or claims, which is "principally private in nature and do not occur in the ordinary conduct of any trade or commerce as contemplated by the statute." In re Tri-Star Technologies Co., Inc., 257 B.R. 629, 638 (Bankr. D. Mass.2001) (quotations omitted); see Informix, Inc. v. Rennell, 41 Mass. App. Ct. 161, 163, 668 N.E. 2d 1351, 1353 (Mass. Ct. App. 1996), review denied, 672 N.E. 2d 538, 423 Mass. 1110 (1996); Trent Partners & Assocs., Inc., 120 F. Supp. 2d at 107 n.26. Indeed, that general rule is "firmly established." Informix, Inc., 41 Mass. App. Ct. at 163, 668 N.E. 2d at 1353. Based on the above, it is clear that Howard is unable to pursue his claim for unfair and deceptive trade practices as a matter of law. See In re Tri-Star Technologies Co., Inc., 257 B.R. at 638.

## CONCLUSION

For the reasons set forth above, Defendant, Tech Trading, Inc., respectfully requests that this Court dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and order that it be referred to alternative dispute resolution, mediation or arbitration before the American Arbitration Association pursuant to the agreement between the parties. In addition, Defendant, Tech Trading, Inc., respectfully requests that this Court vacate the entry of

default pursuant to Rule 55(c) of the Federal Rules of Civil Procedure that was entered

previously by the Clerk of the Superior Court Department of the Trial Court of the

Commonwealth of Massachusetts, Plymouth County.

## REQUEST FOR ORAL ARGUMENT

The Defendant requests oral argument on this Motion.

Respectfully submitted,

**GIBSON & BEHMAN, P.C.**
Attorneys for Defendant, Tech Trading, Inc.

By:   Arthur E. Maravelis (564673)
One Mountain Road
Burlington, Massachusetts 01803
Telephone: (781) 229-6667
Facsimile: (781) 229-2368
Email: amaravelis@gibsonbehman.com

Dated: June 27, 2005

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon Robert Kraus, Esq, Kraus & Hummel, LLP 99A Court Street, Plymouth, MA 02360 (counsel for Plaintiff) by first class mail and to the Civil Clerk, Plymouth Superior Court, Court Street, Plymouth, MA 02360 by hand delivery.

_____
Arthur E. Maravelis (564673)

17



EXHIBIT
A

## SALES REPRESENTATIVE AGREEMENT

This Agreement is made as of August 1, 2003,

by and between

Tech Trading, Inc. (the "Company"),

and

Gregory W. Howard (the "Sales Representative").

### TERMS AND CONDITIONS OF CONSULTANCY AGREEMENT

1.    *Term.* This Agreement shall commence on August 1, 2003 and continue for one (1) year, unless terminated in accordance with paragraph 15 of this Agreement. This Agreement may be extended in writing by mutual consent of Company and Sales Representative.

2    *Description of Services to be Rendered by Sales Representative.* Sales Representative shall provide services to the best of his abilities and to the Company's satisfaction, including, without limitation,

(A)    Pricing, maintaining sales quotas and traveling to visit clients and accounts including but not limited to Tech Data and Ingram Micro;

3.    *Sales Representative's Responsibilities.* Sales Representative shall perform all work in a professional and courteous manner. Sales Representative shall adhere to all Company policies in the performance of the consulting work. Sales Representative shall maintain, at Sales Representative's sole cost and expense, employee and business insurance such as workers' compensation insurance as required by law. Sales Representative will pay all employment or business taxes applicable to its business that may arise from this Agreement. Sales Representative further agrees to be responsible for all of Sales Representative's federal and state taxes, withholding, social security, insurance, and other benefits.    Sales Representative agrees to obtain workers' compensation insurance for his or her employees (should he desire to hire any) and to furnish to Company a copy of such certificate of workers' compensation insurance.

4. *Commissions and other Payments.* The Sales Representative's compensation under this Agreement is limited to (A) commissions in the amount of twenty-six percent (26%) of the adjusted gross profit of sales, which includes sales minus purchase order cost of goods sold.

For the purposes of calculating costs of goods sold. only the following items shall be included:

(i) on all Ingram Micro sales, one percent (1%) of sales for return of merchandise authorizations (RMA), plus two percent (3%) of cost of goods sold for shipping and handling (freight in and out). plus a four percent (4%) of net sales charge for sales rebate;

(ii) on all Tech Data sales. one percent (1%) of sales return of merchandise authorizations (RMA). plus two percent (3%) of cost of goods sold for shipping and handling (freight in and out)

(iii) on all marketing and promotional monies paid out by company. If company vendor contributes any or all said amounts for direct use by the sales representative. these monies will be added to sales representative adjusted gross profit amount

Sales Representative shall be paid a draw ("Draw") weekly. in the amount of fifteen thousand dollars ($15,000.00) per month (or $3,461.54 per week) against the above commissions. It is understood by the parties that the Draw is based on the requirement that adjusted gross profit as defined above shall be fifty thousand dollars ($50,000.00) per month for the each of the three months under consideration for payment, for a total of one hundred fifty thousand dollars ($150,000.00) for the three month period. Should the adjusted gross profit not amount to $150,000 for the three month period. Sales Representative's commission earned shall be reduced by the percentage reduction of the adjusted gross profit. Commissions are to be paid quarterly. and on the first Friday after the end of a quarter. Unless otherwise provided for herein, in the event of termination as provided in this Agreement, Sales Representative shall be entitled only to payment for sales completed, and any open or back orders.

5. *Expense Reimbursement.* Company shall not be liable to Sales Representative for any expenses paid or incurred by Sales Representative with the exception of authorized travel expenses. meals, overnight accommodations or unless otherwise agreed to by the Company. To qualify for any reimbursement of expenses hereunder, Sales Representative shall submit to Company an expense report containing reasonable detail and sufficient backup documentation, including original receipts. as required by the Company policy. Once approved by company reimbursement will be sent to Sales Representative within 7 working days

6. *Independent Sales Representative Status.* Sales Representative is an independent contractor of Company. Nothing in this Agreement is intended to make Sales Representative an agent or employee of Company. Nothing in this Agreement shall be construed as a guarantee of future employment or engagement. or as a limitation upon Company's sole discretion to terminate this Agreement at any time without cause as

2

provided in paragraph 15. This Agreement shall not be considered to create a joint venture or partnership in any manner

7. *Right of First Refusal.* Sales Representative shall offer to Company in writing a right of first refusal on all new business inclusive of new clients, sales, vendors and purchases. Company has either accepted or decline new business, sales, vendors and purchases with in 48 hours by email of offer. In the event the company declines any offer made by Sales Representative, than the Sales Representative has the right to take the offer to a third party with the exception of offers to Ingram Micro, Tech Data and Synnex. In the event that the Purchase offer is accepted by the company, the Sales Representative will be entitled to 50% of the savings from the best price at the time of said purchase to be given by the Companies purchasing dept.

8. *Confidentiality.* As used herein, the term "Confidential Information" includes:

any information, technical data, or know-how, including, but not limited to, that which relates to research, product plans, products, services, customers, markets, software, development, inventions, processes, designs, drawings, engineering, equipment and configuration information, policies, procedures, contracts, sales, marketing, training, strategy or finances of Company. Confidential Information does not include information, technical data or know-how which (i) is in the possession of the receiving party at the time of disclosure as shown by the receiving party's files and records immediately prior to the time of disclosure; or (ii) prior or after the time of disclosure becomes part of the public knowledge or literature, not as a result of any inaction or action of the receiving party, or (iii) is approved by the disclosing party, in writing, for release.

Sales Representative acknowledges that in the course of performing consulting work pursuant to this Agreement, Sales Representative will gain access to Confidential Information which is valuable intellectual property belonging to Company. Sales Representative has received no license or any other interest in this Confidential Information, but shall use all Confidential Information solely for the performance of services under this Agreement. Sales Representative will not disclose any Confidential Information to any third party without the prior written consent of Company. Sales Representative agrees that all Confidential Information is and shall continue to be the exclusive property of Company, whether or not prepared in whole or in part by Sales Representative and whether or not disclosed to or entrusted to the custody or control of Sales Representative.

9. *Ownership of Work Product* – All intellectual property as defined herein originated and prepared pursuant to this Agreement for Company by Sales Representative shall belong exclusively to Company and may be used or transferred by Company in any manner which it finds appropriate. Sales Representative shall inform Company of all such intellectual property as soon as it is prepared or comes into existence. Sales Representative shall not be entitled to any additional payment for this purpose.

3

Intellectual property shall include an invention, discovery, process, idea, trademark, service mark, copyright work, design, patent, domain name, internet address, plan, study, article, specification, exhibit, program, software code, documentation, improvement, formula, technique, model, other data, or other intellectual property right recognized by law.

To the extent any intellectual property prepared by Sales Representative in the performance of services under this Agreement include material subject to copyright protection, such materials have been specially commissioned by Company and they shall be deemed "work for hire" as such term is defined under U.S. copyright law. To the extent any such materials do not qualify as "work for hire" under applicable law, Sales Representative hereby irrevocably and exclusively assigns to Company, its successors and assigns, all right, title, and interest in and to all such materials. To the extent any Sales Representative rights in the same, including without limitation any moral rights, are not subject to assignment hereunder, Sales Representative irrevocably and unconditionally waives all enforcement of such rights.

Sales Representative shall execute and deliver such instruments and take such other actions as may be required to carry out and confirm the assignments contemplated by this paragraph and all other provisions of this Agreement.

Any and all Intellectual property, in whatever form, shall not be sold or transferred without Company's prior written consent, and shall be turned over to Company upon request or at the conclusion or termination of this Agreement.

10    *Representations and Warranties.* Sales Representative hereby warrants that: (a) there are no agreements or binding obligations enforceable against Sales Representative which would be violated by entering into this Agreement or by providing service hereunder; and (b) Sales Representative's performance of services under this Agreement will not infringe any copyright, patent, trade secret, or other proprietary right held by any third party.

11.    *Release*    Sales Representative hereby agrees to execute a general release in favor of Company to release any and all claims he has or may have had against Company for the time period up to and including the date of execution of this agreement arising out of the employment or other relationship between Sales Representative and the Company. The release is hereby incorporated herein and made a part hereof as Attachment A.

12.    *Other Activities.* Sales Representative is free to engage in other independent contracting activities, provided that Sales Representative does not engage in any such activities which are inconsistent with or in conflict with any provisions hereof, or that so occupy Sales Representative's attention as to interfere with the proper and efficient performance of Sales Representative's services thereunder.

Sales Representative agrees, during the term hereof and for a period of 6 months following termination of this Agreement that Sales Representative will not:

    (a)    solicit, approach or attempt to influence, directly or indirectly, any employee of Company to terminate his/her employment and work for Sales Representative or any other person;

    (b)    <u>solicit, approach or attempt to influence, directly or indirectly, any client of Company with whom Sales Representative had contact or dealings during the performance of services under this Agreement; or</u>

    (c)    <u>perform any services for any person or entity in competition with (1) Company, or (2) any client of Company with whom Sales Representative had contact or dealings during the performance of services under this Agreement.</u>

13.   *Non-Performance by Company.*   In the event that Company does not comply with any purchase order delivered by Sales Representative for a sale to any customers of sales representative , which results in a cessation of that business as defined in Cancellation of Contract or breach of customer Purchase order after a 30 business day refusal of time, Company shall pay to Sales Representative for the three months after cancellation of the business a sum equal to the commissions earned by Sales Representative for the three months prior to the cancellation of the business or cessation of Purchase Orders.

14.   *Termination.*   This Agreement shall be terminable by mutual agreement in writing signed by Company and Sales Representative at any time. This Agreement shall be terminable by Company at any time for Sales Representative's non performance of the contract specifications. If termination is for cause, no prior notice is required. If termination is other than for cause, Company shall have the option to give Sales Representative 5 days' written notice of termination.

Termination of the Agreement for any reason shall not terminate any rights or obligations arising before such termination and shall not prejudice any right of either party to claim damages or injunctive relief against the other party. The obligations regarding confidentiality and ownership of work provided in this Agreement shall survive termination or expiration of this Agreement. Payment for services prior to termination is provided for in paragraph 5 herein.

15.   *Entire Agreement.*   This Agreement constitutes the entire agreement and understanding between the parties hereto and supersedes any and all prior agreements and understandings, whether oral or written, between the parties hereto. This Agreement shall not be modified or amended except by written agreement signed by Sales Representative and Company. No oral modifications will be enforceable.

5

16.    *Governing Law and Arbitration*. This agreement shall be governed by and construed in accordance with the laws of the State of Massachusetts. All terms of this Agreement shall be binding upon and inure to the benefit of and be enforceable by the parties hereto and their respective successors in interest, permitted assigns, heirs and legal representatives. Any and all claims arising out of this Agreement or the relationship between the parties shall be resolved through binding alternative dispute resolution. The parties shall initially attempt to negotiate a satisfactory resolution of the claims. If there is a controversy or dispute involving this Agreement or the relationship between the parties that is not resolved by negotiation and agreement of the parties within thirty (30) calendar days, such controversy or dispute shall be resolved first by the parties attempting mediation for a period of thirty (30) days. If the parties are unable to mediate the controversy or dispute arising out of the negotiation making or implementation of this Agreement, then the parties shall be required to resort exclusively to arbitration. Arbitration shall be held in Plymouth, Massachusetts in accordance with the then prevailing Rules of the American Arbitration Association for commercial arbitrations. If the parties are unable to mutually agree upon an arbitrator, the Assignment Judge of Essex County shall appoint a former judge of the Superior Court of New Jersey or the United States District Court for the District of Massachusetts as an arbitrator. The decision of the arbitrator will be final and binding upon the parties hereto and may be enforced pursuant to the laws of the State of Massachusetts.

17.    *Notices*. All notices hereunder shall be in writing and shall be deemed to have been duly given if sent by registered or certified mail, postage prepaid, to the following addresses:

Sales Representative:

Gregory W. Howard    This agreement is pending final approval of Gregg Holland drafted by Greg Howard and council Robert Kraus

Company:

Tech Trading, Inc    This agreement is pending final approval of Tech Trading council Lou Medvene

18.    *Assignment*. Sales Representative shall not assign, subcontract or delegate Sales Representative's rights and obligations under this Agreement without the written consent of Company.

19. *Miscellaneous*.

   (a) *Severability*. If any provision of this Agreement, or application thereof is
   held to be invalid, unenforceable or void, the remainder of this Agreement
   shall remain in full force and effect.

   (b) *Construction*. The headings and captions of this Agreement are provided
   for convenience only and are intended to have no effect in construing or
   interpreting this Agreement. The language in all parts of this Agreement
   shall be in all cases construed according to its fair meaning and not strictly
   for or against either party.

   (c) *Rights Cumulative*. The rights and remedies provided by this Agreement
   are cumulative. Exercise of any right or remedy by either party (or by its
   successor) – whether pursuant to this Agreement, any other agreement, or
   law – shall not preclude or waive its right to exercise any or all other
   rights and remedies

   (d) *Nonwaiver*. No failure or neglect of either party in any instance to
   exercise any right, power or privilege hereunder or under law shall
   constitute a waiver of any other right, power or privilege or of the same
   right, power or privilege in any other instance. All waivers by either party
   must be contained in a written instrument signed by the party to be
   charged and, in the case of Company, by an officer or other person duly
   authorized by Company.

   (e) *Assistance*. Following conclusion or termination of this Agreement, Sales
   Representative shall furnish such information and assistance to Company
   as may reasonably be required by Company in connection with services
   performed by Sales Representative. Assistance may include any process
   required to confirm ownership of intellectual property by Company.

IN WITNESS WHEREOF, the parties have executed this Agreement to be effective as of the
date written above.

Tech Trading, Inc.

By:

By:

7

Its _____

Sales Representative


_____
By:

§

# Commonwealth of Massachusetts
## County of Plymouth
### The Superior Court

CIVIL DOCKET# PLCV2005-00603

RE:   Howard v Tech Trading, Inc.

TO:Tech Trading, Inc.
500 West Main Street
Suite 11
Wyckoff, NJ 07481





---

### DEFAULT ORDER (Mass. R. CIV. P. 55a)

The defendant named below, having failed to plead or otherwise defend in the above referenced case as required by MRCP 12(a), is hereby defaulted pursuant to MRCP 55(a):

**Default (55a) as to defendant Tech Trading, Inc.**

The plaintiff shall file:

1. A motion for an assessment of damages and default judgment pursuant to Mass. R.Civ.P.55(b)2 and subject to Mass.R.Civ.P.54(b) by **07/17/2005**, or

2. A request for Default Judgment pursuant to Mass.R.Civ.P. 55(b)1 and subject to Mass.R.Civ.P.54(b) by **07/17/2005**(contract-sum certain only).

Dated at Plymouth, Massachusetts this 17th day of June, 2005.

Francis R. Powers,
Clerk of Courts

BY:

Adam Baler
Assistant Clerk

Telephone: (508) 747-6911

cvdefl55a_2.wpd 165296 defl55a campbell